UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| LESLIE MCLAURIN, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) | 09 C 5144 |
| v. | ) |  |
|  | ) | Judge George M. Marovich |
| JOHN E. POTTER, Postmaster General, | ) |  |
| U.S. Postal Service, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

### MEMORANDUM OPINION AND ORDER

Plaintiff Leslie McLaurin ("McLaurin") filed suit against defendant John E. Potter ("Potter"), Postmaster General of the U.S. Postal Service. In her complaint, McLaurin alleged that she was discharged on the basis of her color, race and sex in violation of Title VII of the Civil Rights Act of 1964 and on the basis of her alleged disability in violation of the Rehabilitation Act. Defendant moves for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.  Background**

Before the Court discusses the facts, it reiterates the importance of complying with Local Rule 56.1. Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. As the Court notes on its website, the Court enforces Local Rule 56.1 strictly. Facts that are argued but do not conform with the rule are not considered by the Court. In addition, where one party supports a fact with admissible evidence and the other party denies the fact without citation to admissible evidence, the Court deems the fact admitted. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). For example, with respect to ¶¶ 16 and 17 of defendant's

statement of facts, plaintiff denied the reasons for her termination, but she failed to cite any record evidence. Accordingly, those facts are deemed admitted. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court.

The following facts are undisputed unless otherwise noted.

Plaintiff McLaurin worked for the Postal Service at the Moraine Valley facility from March 15, 2008 until she was discharged on or about June 13, 2008. During the nearly three months that she worked for the Postal Service, McLaurin served as a transitional employee ("TE"), which, according to the terms of the relevant collective bargaining agreement, meant her position was a temporary position that could not last more than 360 days. A TE serves a probationary period for the first 90 work days (or the first 120 calendar days) of employment, and during that time, a TE is not entitled to use the union grievance policy or to rely on the progressive discipline policy.

When McLaurin started her employment with the Postal Service, the Postal Service trained her with respect to its rules and procedures. Among other things, McLaurin was told that she was not allowed to use a cell phone while delivering mail unless she was calling the station or there was an emergency. (She was allowed to use a cell phone on breaks.) The Postal Service also trained McLaurin with respect to its park-and-loop delivery technique. The Postal Service requires carriers to park their delivery truck at the end of a street, deliver mail on foot up one side and back down the other side of the street, return to the vehicle and drive to the next street. The park-and-loop method is more efficient than the hopping-and-dropping method, where a

carrier hops off the truck at each house to carry mail to the door and then hops back on the truck to drive a few feet to the next house.

During her brief time working for the Postal Service, McLaurin reported directly to supervisor Debra Mondie ("Mondie"). The supervisors (including Mondie), in turn, reported to James Fuscaldo ("Fuscaldo"), who scheduled work assignments and managed the first-level supervisors. During the relevant time period, Fuscaldo reported to Jayne Duewerth ("Duewerth), the Officer in Charge/Acting Postmaster at the Moraine Valley facility.

While she worked for the Postal Service, McLaurin heard a few comments related to sex or race. McLaurin twice overheard Fuscaldo refer to her as the "black girl." Another time, Fuscaldo and McLaurin had a conversation about a route with tall mailboxes. Fuscaldo told McLaurin it was a man's route and that she could not reach the mailboxes.

Until June 2008, McLaurin was never written up or reprimanded for her performance at the Postal Service. Duewerth, who occasionally checked the progress of carriers, once witnessed McLaurin talking on her cellphone while delivering mail and twice saw McLaurin hopping and dropping (i.e., driving her vehicle to every house instead of leaving it at the end of the street and walking from house to house). Duewerth did not discuss these problems with McLaurin.

The events that led to McLaurin's discharge began on June 11, 2008. That morning, McLaurin told her supervisor (Mondie) that she did not feel well and needed help with her route. Mondie told her to deliver as much as she could. When Mondie checked on McLaurin on the street at 12:30 p.m., McLaurin told Mondie she was experiencing sharp leg pains and wanted help with her route. Mondie told McLaurin to continue with her route.

-3-

At about 3:45 that afternoon, McLaurin returned to the Moraine Valley facility without having delivered two hours of her mail route. McLaurin had injured her knee during the route. When she tried to phone the facility, no one answered the phone. After she returned to the Moraine Valley facility, McLaurin spoke to Fuscaldo about her knee. Fuscaldo told her to go home and call in the next day to report on whether her knee was getting better and whether she was able to work. The next morning (June 12), McLaurin told Fuscaldo by telephone that her knee was more swollen and that she was going to the hospital.

Separately but also on June 12, a Postal customer arrived at the Moraine Valley facility and complained about McLaurin to Duewerth. The customer complained that McLaurin was hopping and dropping and talking on her cell phone while delivering mail. The customer also complained that McLaurin had misdelivered mail and that when the customer brought that fact to McLaurin's attention, McLaurin displayed a bad attitude.

The next day, June 13, McLaurin arrived at Fuscaldo's office and presented a doctor's note. The note said McLaurin could not do any prolonged standing or walking for one week. Fuscaldo read the note and told McLaurin that she should go home for the day. Fuscaldo also told McLaurin that he had hired her to carry mail on walking routes and that he did not have any alternative "light duty" work for her to do. In addition, Fuscaldo informed McLaurin that she could be fired for that same reason.

McLaurin also spoke to Duewerth on June 13. After McLaurin left Fuscaldo's office, McLaurin and a union steward filled out an accident report about her knee injury. In McLaurin's presence, the union steward informed Duewerth that McLaurin had deviated from her route on

June 11. McLaurin admitted to Duewerth that she had not obtained permission from her supervisor before deviating from her route.

After her conversation with McLaurin on June 13, Duewerth concluded that McLaurin should be discharged. Duewerth discussed her conclusion with Fuscaldo, who agreed. Duewerth and Fuscaldo signed a June 13 termination letter to McLaurin. In it, they explained to McLaurin that she was being discharged, effective June 16, for unsatisfactory work performance. The letter noted that McLaurin had returned to the station on June 11 with two hours of undelivered mail and that a customer had complained on June 12 that McLaurin was driving her vehicle to every stop on the route and using a cell phone while delivering mail. The letter noted that these actions were contrary to Postal Service policies, which she had learned during four days of training. Although Duewerth expected to give the letter to McLaurin on June 14, McLaurin did not return to work until June 17, at which time she was given the letter. McLaurin has put forth evidence (her own affidavit) that she never hopped and dropped while delivering mail and that she used her cell phone while delivering mail only for official reasons.

At the Moraine Valley facility, the Postal Service employed other TEs, who worked under Fuscaldo and Duewerth. David Homyak ("Homyak") is a white male who worked as a TE at the Moraine Valley facility. On May 8, 2008, after Homyak's probationary period had been completed, Homyak had an emergency that required him to take his grandmother to a nursing home. Homyak had previously informed the Postal Service that he would need to do so, but he did not know when it would happen, because his grandmother was on a waiting list. On May 8, 2008, Homyak did not return any undelivered mail to the station, but he was unable to deliver

additional mail for an absent carrier, as he had planned to do. Homyak was not disciplined for the May 8, 2008 event.

Meagan O'Sullivan ("O'Sullivan") is a white woman who worked as a TE at Moraine Valley. On one occasion, O'Sullivan returned to Moraine Valley with undelivered mail, because she needed to pick her sick son up from school. Before she brought the mail back to the station, O'Sullivan called her manager to obtain permission to do so. O'Sullivan was not disciplined.

Casey Thor ("Thor") is a white woman who worked as a TE at Moraine Valley. Moraine Valley once received a customer complaint about Thor. Fuscaldo testified that he did not know whether Thor had been disciplined.

Today, McLaurin is limited in her ability to stand for long periods of time, to perform necessary exercise, to bear weight and to bend and return to a standing position without assistance. Her doctors recommend cortisone shots to reduce inflammation. Her knee also shows signs of arthritis.

## II.     Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at

trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

### A. McLaurin's Title VII claims.

The Court first considers McLaurin's claims that she was discharged on the basis of her color, race and sex. Pursuant to Title VII of the Civil Rights Act of 1964, it "shall be an unlawful employment practice for an employer–(1) to fail or refuse to hire or to discharge . . . any individual . . . because of such individual's race, color, religion, sex, or national origin." *See* 42 U.S.C. § 2000e-2(a). A plaintiff may establish discrimination in violation of Title VII either by putting forth direct evidence of discrimination or by following the indirect method under *McDonnell Douglas Corp. v. Green.*, 411 U.S. 792, 802 (1973). In this case, McLaurin has elected to proceed under the indirect method.

To make out a *prima facie* case of discrimination in the termination context, a plaintiff must establish that (1) she is a member of a protected class; (2) she performed her job to her employer's expectations; (3) she was discharged; and (4) the employer either filled the position with a person not in the plaintiff's protected class or similarly-situated individuals outside her protected class were treated more favorably. *Jennings v. Illinois Dep't of Corrections*, 496 F.3d 764, 767 (7th Cir. 2007); *Pantoja v. American NTN Bearing Mfg. Corp.*, 495 F.3d 840, 845-846 (7th Cir. 2007). If the plaintiff makes out a *prima facie* case of discrimination, "the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its decision." *Rudin v. Lincoln Land Community College*, 420 F.3d 712, 724 (7th Cir. 2005). "If the employer does articulate such a reason, then 'the plaintiff must show by a preponderance of the evidence that

the employer's proffered reasons were merely a pretext for discrimination.'" *Rudin*, 420 F.3d at 724.

The "burden of establishing a prima facie case of disparate treatment is not onerous." *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 253 (1981). It requires a plaintiff to show that she was "rejected under circumstances which give rise to an inference of unlawful discrimination" and the "standard is not inflexible" because facts vary in different cases. *Burdine*, 450 U.S. at 253 and n.6. In this case, the Court assumes, without deciding, that plaintiff could make out a *prima facie* case of disparate treatment on her sex, race and color claims. *See Bodenstab v. County of Cook*, 569 F.3d 651, 657 (7th Cir. 2009).

Next, the Court concludes that defendant has articulated a legitimate, non-discriminatory reason for terminating McLaurin's employment. The Postal Service informed McLaurin at the time of discharge that her employment was terminated due to poor performance and gave two examples. First, McLaurin had returned to the station on June 11 with two hours of undelivered mail. Second, the Postal Service had received a customer complaint on June 12 that McLaurin was talking on a cell phone while delivering mail and was driving her truck to each house along the route.

To defeat summary judgment, McLaurin must show this proffered reason was a pretext for discrimination. A pretext is dishonest explanation, rather than an error. *See Bodenstab*, 569 F.3d at 657. To show pretext, McLaurin "must establish that the explanation is a lie, which permits a jury to infer that the tale has been concocted to conceal an unlawful truth. It is not enough to demonstrate that the employer was mistaken, inconsiderate, short-fused, or otherwise benighted; none of those possibilities violates federal law. Poor personnel management receives its comeuppance in the market rather than the courts." *Yindee v. CCH Inc.*, 458 F.3d 599, 602 (7th Cir. 2006) (internal citations omitted).

McLaurin argues that the Postal Service's decision must have been pretextual, because other individuals were treated more favorably. The Court does not agree. Plaintiff has not put forth evidence of any probationary employee who, within the course of two days, both returned to the post office with undelivered mail without prior permission and received a customer complaint. Plaintiff put forth evidence that a white employee, Thor, received a customer complaint, but it is not clear what the customer complained about. Furthermore, plaintiff did not put forth evidence that Thor was not disciplined. Instead, McLaurin put forth evidence that one witness did not know whether Thor had been disciplined. Next, Homyak, who plaintiff also compares herself to, did not actually fail to complete his route. Homyak merely declined additional work, and he had prior approval to do so. Finally, O'Sullivan had approval from her supervisor before returning undelivered mail in order to pick her sick son up from school. Unlike O'Sullivan, plaintiff did not have (and does not claim to have had) prior approval to deviate from her route. Accordingly, plaintiff's evidence of how other employees were treated does not suggest that the Postal Service's explanation for plaintiff's discharge was a pretext for discrimination.

In fact, several undisputed facts suggest that the Postal Service's explanation was not a pretext for race, color or sex discrimination. First, it is undisputed that McLaurin admitted to Duewerth on June 13 that she had deviated from her route on June 11 without the prior approval of her supervisor. Second, it is undisputed that, on June 12, a customer complained to the Postal Service that McLaurin was driving her vehicle to every stop on the route and using a cell phone while delivering mail. McLaurin says she did not talk on her cell phone or "hop and drop," but that evidence shows merely that the customer may have been mistaken. It does not suggest the Postal Service lied when it relied on the customer's complaint.

There is no genuine issue of material fact, and the Postal Service is entitled to judgment as a matter of law on McLaurin's Title VII claims. Accordingly, the Court grants the Postal Service's motion for summary judgment on McLaurin's Title VII claims.

**B.     McLaurin's claim under the Rehabilitation Act**

Next, McLaurin asserts that she was discharged due to her alleged disability in violation of the Rehabilitation Act, which incorporates the standards of the Americans with Disabilities Act. 29 U.S.C. §794(d). As an element of her claim, McLaurin must show that she is disabled. This is where her claim fails, as a matter of law.

As of June 2008, when McLaurin was discharged, the ADA[1] defined disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or as "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A) & (C). McLaurin does not claim that she was actually disabled within the meaning of the ADA. Rather, she claims that she was regarded, by the Postal Service, as being disabled within the meaning of the ADA. To show that she was regarded as disabled, McLaurin "must demonstrate either that (1) [her] employer mistakenly believes that [she] has an impairment that substantially limits a major life activity, or (2) [her] employer mistakenly believes that an existing impairment, which is not actually limiting, does substantially limit a major life activity." *Brunker v. Schwan's Home Service, Inc.*, 583 F.3d 1004, 1008 (7th Cir. 2009).

McLaurin asserts that the Postal Service regarded her as being substantially limited in her ability to walk. McLaurin argues, "Fuscaldo understood that McLaurin had an impairment that substantially limited her ability to walk because he examined her medical restrictions, sent her

---

[1]The Court's citations to the ADA are to portions of the ADA that were in effect when McLaurin was discharged in June 2008. *See Kotwica v. Rose Packing Co., Inc.*, __ F.3d __, __, 2011 WL 982380 at *3 (7th Cir. Mar. 22, 2011) (applying version of ADA in effect at the time of the alleged discrimination).

home from work, foreclosed the possibility of reassignment to less rigorous tasks and threatened to fire her based on her inability to walk." The problem with this argument is that the medical restrictions Fuscaldo reviewed said that McLaurin was restricted from prolonged standing or walking for a period of *one week*. Temporary impairments are not disabilities under the ADA. *Brunker*, 583 F.3d at 1008 ("An impairment is a disability only when its impact is permanent or long term") (citations omitted). McLaurin concedes as much, but she argues that her impairment was not temporary, because her knee limits her ability to walk even now, several years later. That evidence, however, is not relevant to the question of how the Postal Service perceived her impairment at the time the decision was made. The determination of whether one is disabled (or regarded as being disabled) is considered as of the time of the alleged disparate treatment. *Burnett v. LFW* Inc., 472 F.3d 471, 483 (7th Cir. 2006); *Bay v. Cassens Transport Co.*, 212 F.3d 969, 974 (7th Cir. 2000). A jury could conclude that, at the time of McLaurin's discharge, the Postal Service regarded her as being *temporarily* (i.e., for the period of a week) unable to walk her route. McLaurin has not, however, put forth sufficient evidence from which a reasonable jury could conclude that the Postal Service regarded her as being disabled under the ADA.

There are no genuine issues of material fact, and the Postal Service is entitled to judgment as a matter of law on McLaurin's Rehabilitation Act claim. Accordingly, the Court grants the Postal Service summary judgment as to the Rehabilitation Act claim.

## IV.  Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary judgment.

ENTER:

*George M. Marovich*
George M. Marovich
United States District Judge

DATED: April 26, 2011